## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CLEARDOC, INC. D/B/A OPENREEL,  )<br>)<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>RIVERSIDEFM, INC.,  )<br>)<br>Defendant.  )<br>) | C.A. No.: ____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff ClearDoc, Inc. D/B/A OpenReel ("OpenReel" or "Plaintiff") files this complaint against RiversideFM, Inc. ("Riverside" or "Defendant") for infringement and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 271 *et seq.*, by OpenReel against Defendant for infringement of U.S. Patent No. 10,560,500 (the "'500 Patent")

## THE PARTIES

2. Plaintiff OpenReel is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 80 Orville Drive, Suite 100, Bohemia NY 11716.

3. Upon information and belief, defendant Riverside is a corporation organized and existing under the laws of the State of Delaware, headquartered in Tel Aviv, Israel.

## JURISDICTION AND VENUE

4. This action arises under the patent laws of the United States. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

5. Upon information and belief, this Court has personal jurisdiction over Riverside because Riverside is a corporation organized and existing under the laws of Delaware.

6. Upon information and belief, this Court also has personal jurisdiction over Riverside by virtue of the fact that Riverside has committed patent infringement with foreseeable harm and injury to OpenReel throughout the United States, including in Delaware. Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Delaware Long Arm Statute, due at least to Defendant's substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and/or (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in the State of Delaware and in this District.

7. Upon information and belief, Defendant has operated and continues to operate an interactive website (www.riverside.fm) and mobile applications that are accessible to all residents of the State of Delaware, including in this District, through which Defendant advertises and makes available for use certain electronic video services that are herein accused of infringement. Upon information and belief, Riverside's actions are conducted in and/or purposefully directed at the United States as a whole and the State of Delaware in particular. Riverside has purposefully availed itself of the rights and benefits of Delaware law by engaging in systematic and continuous contacts with Delaware. Upon information and belief, Riverside regularly and continuously transacts business within Delaware, including by selling and promoting its remote video and audio platform via the internet. Upon information and belief,

Riverside derives substantial revenue from the sale of those products in Delaware and has availed itself of the privilege of conducting business within Delaware. Therefore, Riverside can reasonably expect to be subject to jurisdiction in the Delaware courts.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b) because Riverside is a corporation organized and existing under the laws of the State of Delaware and therefore resides within this District.

9. To the extent Riverside is deemed a foreign corporation and does not have a regular and established place of business in the United States, such corporation may be sued in any judicial district. Venue for foreign corporations is governed by the general venue statute, which provides that "a defendant not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c)(3).

## BACKGROUND AND TECHNOLOGY

10. Founded in 2016, OpenReel enables remote video creation for enterprises, media, and entertainment companies worldwide, utilizing OpenReel's end-to-end Remote Video Capture™ solutions to direct and film high quality video content via mobile devices, desktop devices, and/or webcams.

11. OpenReel is headquartered in New York, with its employees distributed worldwide. OpenReel's leading Remote Video Capture™ platform empowers enterprises, consumer brands, media companies, and agencies to direct and film professional quality video content from over 125 countries. The current remote work environment has demonstrated the importance of OpenReel's platform that facilitates seamless communication. OpenReel's patented technology addresses the growing demand for high-definition remote video creation. Before OpenReel's innovation, companies that wanted high quality video content were largely forced to use onsite video production agencies. Recording video streams online was not

considered a viable alternative because the video quality can quickly deteriorate due to bandwidth or connection issues. Companies did not have a way to conveniently and remotely create high quality video productions.

12. With its patented, enterprise-grade suite of remote video direction, capture, and collaboration capabilities, OpenReel enables businesses to cut down on time and resource for on-location video shoots. OpenReel's platform reduces the time, expense, and organizational burdens posed by in-person video shoots and workarounds using video conferencing or streaming tools. OpenReel further allows businesses to scale content creation initiatives efficiently, effectively, and securely. As a worldwide leader and innovator in remote video and audio platform, OpenReel devotes significant resources to its research and development, which has resulted in, among other things, development of innovative products and product features.

13. Using OpenReel's Remote Video Capture™ platform, end-to-end video content creation can be done with fewer resources. OpenReel's platform allows users to direct, script, capture, and collaborate on up to 4K video in real time locally on the device — regardless of their location or bandwidth — and upload it to secure cloud storage. Other advantages include the capabilities to remotely control the camera on a user's device, reliably record high-quality video and audio content locally on a device regardless of network bandwidth or connection, and easily capture improved video and audio content with advanced platform features.

## THE PATENT IN SUIT

14. On February 11, 2020, U.S. Patent No. 10,560,500 (the aforementioned '500 Patent), titled "SYSTEMS AND METHODS FOR RECORDING AND STORING MEDIA CONTENT" was duly and legally issued by the United States Patent and Trademark Office. Shijo Mathew, Co-founder and Chief Technology Officer of OpenReel, is the inventor of the '500 Patent. Plaintiff ClearDoc, Inc. D/B/A OpenReel is the assignee of all rights, title, and interest in the

'500 Patent and has the right to enforce it. A copy of the '500 Patent is attached hereto as Exhibit A.

15. The '500 Patent represents a breakthrough development in the practical implementation of methods for recording media content in mobile devices such as mobile phones, tablets, or personal computers. In particular, the '500 Patent discloses and claims methods and systems of facilitating recording of media content by a mobile device. The disclosed systems and methods address several industry challenges, including proper framing a video when unassisted, limited storage capacity of some mobile devices, and poor video or audio qualities.

16. The technology disclosed and claimed in the '500 Patent confers numerous advantages. For example, the claimed methods and systems allow the mobile device to record the media content in a high quality, uncompressed format as the mobile device only temporarily stores the media content in local memory. As another example, the claimed methods and systems permit the control system to control and/or automate operation of the mobile device before, during, and/or after the recording process. The disclosed inventions in the '500 Patent enable a user to quickly, conveniently record high quality video in the comfort of his or her own office, home, or other locale without the burden of expensive video camera and lighting equipment.

17. One way in which the '500 Patent improved over prior art methods was by creating a system that permits communication sessions even among those with bandwidth constraints, while still allowing the use of high-quality video and audio. By establishing a communication session and also storing media content locally, an inventive concept of the '500 patent allows users with bandwidth constraints to communicate in real-time or near real-time during a communication session, even at lower quality levels, while also permitting storage of high-quality content that can be used at a later time, such as for editing. Rather than recording

the real-time feed (which may degrade in quality due to internet connections), OpenReel's patented invention enabled recording of a separate, high-quality version of the production on the user's local device. Another inventive concept of the '500 Patent also addresses a challenge of limited storage on many mobile devices. For example, the '500 Patent permits deleting media content stored on the mobile device, thus permitting the freeing of local memory. This innovation allows a host user to simultaneously interface with a guest user without fear of problematic internet connections while also ensuring that a high-quality video rivaling on-site productions will be saved for later use.

18. The ease of use of the invention in the '500 Patent represents a great advance over prior methods, which typically required professional video training and equipment, as well as fast, stable internet connection. The technology embodied in the '500 Patent improves over prior disadvantages.

## RIVERSIDE'S INFRINGEMENT

19. OpenReel realleges, and incorporates in full herein, each preceding paragraph.

20. Upon information and belief, Riverside markets a video and audio recording platform, including software updates and/or device-specific versions, that it has introduced into interstate commerce (the "Riverside Platform"). Exemplary screenshots of the Riverside Platform from Riverside promotional videos available on https://riverside.fm/ are also shown below.





7

21. Upon information and belief, Riverside has marketed, sold, offered for sale, and/or used the Riverside Platform throughout the United States and this judicial district. Upon information and belief, Riverside has sold and offered for sale the Riverside Platform through its website https://riverside.fm/pricing (last visited October 4, 2021).



As shown above, Riverside's pricing webpage allows an interested customer to purchase various types of subscriptions. According to Riverside's website, corporate users include, but are not limited to, Disney, Spotify, Microsoft, Verizon Media, Fox Sports, Marvel, and VaynerMedia. *See* https://riverside.fm/.

22. OpenReel has marked its website with "Pat # 9,986,000, 10,560,500." *See* https://www.openreel.com/

ME1 37657765v.1

23. OpenReel has marked its website with the '500 patent since at least as early as August 15, 2020. *See* https://web.archive.org/web/20200815081736/https://www.openreel.com/.

24. Representatives of Riverside have visited OpenReel's website before the filing of this Complaint, as evidenced, for example, by Riverside publishing marketing posts related to OpenReel. *See* https://riverside.fm/blog/openreel-alternative.

25. On August 13, 2021, a representative from Riverside visited OpenReel's website and contact OpenReel support requesting OpenReel pricing information.

26. On information and belief, Riverside has been aware of the '500 Patent before the filing this complaint.

27. Despite the fact that Riverside was aware of the '500 Patent and its infringement, Riverside has continued its infringing activity.

**INFRINGEMENT OF U.S. PATENT NO. 10,560,500**

28. OpenReel realleges, and incorporates in full herein, each preceding paragraph.

29. The Expert Report of Ivan Zatkovich, attached hereto as Exhibit B, compares defendant's Riverside Platform to claim 1 of the '500 patent, showing that Riverside infringes at least claim 1 of the '500 Patent.

30. Upon information and belief, Riverside makes, uses, sells, and/or offers for sale in the United States the Riverside Platform. Upon information and belief, Riverside utilizes U.S.-based servers and practices each step of at least claim 1 of the '500 Patent in the United States. *See* Zatkovich Rep. Thus, Riverside directly infringes under 35 U.S.C. § 271(a), either literally and/or under the doctrine of equivalents, at least claim 1 of the '500 Patent.

31. Riverside, via its use of the Riverside Platform and servers operating the Riverside Platform in the United States, has infringed, infringes, and continues to infringe the '500 Patent, including at least claim 1.

32. Accordingly, Riverside is liable for direct infringement under 35 U.S.C. § 271(a).

33. Upon information and belief, Riverside is liable for inducing infringement of the '500 Patent in the U.S. under 35 U.S.C. §271(b). Upon information and belief, Riverside has induced and continues to induce acts by third parties, such as its users and subscribers, that Riverside knows or should have known would constitute direct infringement of the '500 Patent. Riverside actively induces infringement of the '500 Patent by designing the Riverside Platform to operate via servers in the United States such that it infringes the '500 Patent and by promoting and encouraging the use of the Riverside Platform by third parties in ways that infringe the '500 Patent.

34. Upon information and belief, Riverside actively induces infringement of the '500 Patent by training and encouraging its customers to use the Riverside Platform via web browsers and its iOS app in an infringing manner.

35. Upon information and belief, Riverside has knowledge that end users of the Riverside Platform including, but not limited to, users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms, will use the Riverside Platform via servers in the United States. Riverside encourages such acts, which result in direct patent infringement, by, *inter alia*, training, promotion, support, advertising, and/or sales of the Riverside Platform to its customers.

36. Upon information and belief, there are a substantial number of such direct infringers who purchase the Riverside Platform and practice the claimed methods and use the claimed systems in accordance with directions supplied by Riverside, such as those referenced above, resulting in infringement of the '500 Patent.

37. Upon information and belief, Riverside has had specific knowledge of the '500 Patent and its infringement since before the filing of this Complaint based at least on the '500

10

Patent being marked identified on OpenReel's website. *See* https://www.openreel.com/ (listing Pat# 10,560,500).

38. Upon information and belief, Riverside specifically intends that third parties will infringe the '500 Patent. For example, Riverside markets itself as the "Best OpenReel Alternative" and actively promotes the Riverside Platform towards OpenReel customers and potential customers. *See* Exhibit C ("All in all, Riverside offers a more user-friendly and reliable solution for online video and audio recording as compared to OpenReel. For an affordable monthly subscription fee, you receive locally-recorded videos in 4K quality that are ready for download as soon as the session is over."). As discussed below, Riverside knew or should have known, and was willfully blind, that its product and operation of its product infringes the '500 patent. Despite that knowledge, Riverside not only continued to infringe, but also continued to instruct third parties to infringe and use its products in an infringing manner, as further described below. Thus, Riverside specifically intends that the third parties will infringe the '500 patent.

39. Upon information and belief, despite its knowledge of the patent and its infringement, Riverside continued and continues to encourage third parties to use the Riverside Platform in an infringing manner. For example, Riverside continues to encourage the use of the Riverside Platform through its online website, instructions, and advertisements, despite its knowledge that such use infringes the '500 Patent. *See* https://riverside.fm/.

40. Upon information and belief, Riverside also encourages infringement by third-party users at least by providing its customers and the public with materials, including demonstrations, training, guides, videos, websites, and/or manuals, that depict and instruct its users on how to use the Riverside Platform in an infringing manner. For example, Riverside provides a support page as well as tutorials to instruct its customers to use the Riverside Platform

11

in an infringing manner. *See* Exhibit D; *see also* https://support.riverside.fm/en/ and https://riverside.fm/.

41. Upon information and belief, Riverside similarly encourages its customers' infringement of the '500 Patent by providing support articles instructing end users on how to use the Riverside Platform. *See* https://marketing.riverside.fm/blog. Thus, Riverside specifically enables, encourages, and specifically intends the continued infringement of the '500 Patent by its end users, despite its knowledge that the provided platform enables end users to infringe the '500 Patent.

42. Accordingly, Riverside is liable for inducing infringement under 35 U.S.C. § 271(b).

43. Upon information and belief, Riverside is liable for contributory infringement of the '500 Patent under 35 U.S.C. § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Riverside Platform within the United States. For example, Riverside sells products, such as at least the Riverside Platform, that have no substantial noninfringing uses. Upon information and belief, the Riverside Platform is also especially made and/or adapted for use in an infringing manner because the infringing features cannot be used in a noninfringing manner. Thus, upon information and belief, the Riverside Platform is not a staple article or commodity of commerce suitable for substantial noninfringing use. The Riverside Platform is also a material part of the invention, as it performs the infringing steps of at least claim 1 of the '500 Patent, resulting in infringement.

44. Upon information and belief, Riverside is liable for contributory infringement by having knowledge of the '500 Patent and its infringement and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '500 Patent by its customers, including users and subscribers, who use the Riverside Platform via

servers in the United States. Specifically, Riverside contributes to infringement of the '500 Patent by, *inter alia*, promotion, and/or sales of the Riverside Platform to Riverside's customers, including users and subscribers, for their use of remote audio and video recording method and system claimed in the '500 Patent. Those customers directly infringe the '500 Patent by using the Riverside Platform.

45. Upon information and belief, the Riverside Platform is especially made and/or adapted for use in an infringing manner because it, including use of the infringing features identified in Exhibit B, cannot be used in a noninfringing manner. Thus, upon information and belief, the Riverside Platform is not a staple article or commodity of commerce suitable for substantial noninfringing use. The Riverside Platform is also a material part of the invention, as it performs the infringing steps of at least claim 1 of the '500 Patent, resulting in infringement, as set forth in Exhibit B.

46. Accordingly, Riverside is liable for contributory infringement under 35 U.S.C. § 271(c).

47. OpenReel has suffered and will continue to suffer irreparable harm by Defendant's infringement of the '500 Patent unless the Court enjoins Defendant's infringing activities. OpenReel is also entitled to recover damages from Defendant as a result of its infringement of the '500 Patent. OpenReel has suffered and continues to suffer damages including lost profits by reason of Riverside's infringement and is entitled to recover the same or in any case not less than a reasonable royalty with respect thereto.

48. Riverside has willfully infringed, and continues to willfully infringe, the '500 Patent despite having knowledge of the '500 Patent and of the manner in which it infringes the same.

49.     As discussed previously, upon information and belief Riverside knew of the '500 patent prior to the filing of this complaint. After acquiring knowledge of the '500 patent, Riverside continued to infringe through its use, sale, offer for sale, and making the Riverside Platform, at least as described in Exhibit B.

50.     In doing so, Riverside knew or should have known that its conduct amounted to infringement. For example, OpenReel practices the '500 patent and marks its product with the patent. Upon information and belief, Riverside copied key aspects of OpenReel's product and marketing literature and knew or should have known that such copying constituted infringement. Further, Riverside has analyzed OpenReel's product to compare it with Riverside's product on its website, as shown in Exhibit C. Given the similarities between the products, Riverside knew or should have known that the Riverside Platform infringed the '500 patent. Due to Riverside's willful and deliberate infringement, the Court should award OpenReel up to treble damages under 35 U.S.C. § 284 for infringement of the '500 Patent.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff OpenReel respectfully requests the Court enter judgment in its favor and against Riverside on the claims set forth above and respectfully requests that this Court:

(a)     adjudging that the Defendant has infringed, induced infringement of, and/or contributorily infringed, literally or under the doctrine of equivalents, one or more claims of U.S. Patent No. 10,560,500;

(b)     adjudging that Defendant's infringement has been willful;

(c)     awarding OpenReel the damages to which it is entitled under 35 U.S.C. § 284 that are adequate to compensate OpenReel for Defendant's continuing and future infringement of the '500 Patent, and enter judgment for OpenReel in the amount of its damages,

plus interest and the cost of this action pursuant to 28 U.S.C. § 1920;

    (d) awarding OpenReel enhanced damages under 35 U.S.C. § 284 for Defendant's willful infringement of the '500 Patent;

    (e) A preliminary and permanent injunction against Defendant and its officers, directors, employees, agents, consultants, contractors, suppliers, distributors, all parent and subsidiary entities, all assignees and successors in interest, and all others acting in concert or privity with Defendant from further infringement of the '500 Patent;

    (f) finding that this case is exceptional and awarding OpenReel its reasonable attorneys' fees under 35 U.S.C. § 285;

    (g) awarding any further and additional relief in law or equity that the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff OpenReel respectfully requests a trial by jury on all issues triable of right by a jury.

Dated: October 6, 2021

OF COUNSEL:

Luke J. McCammon
Kelly Lu
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
901 New York Ave., NW
Washington, DC 20001
(202) 408-4000
luke.mccammon@finnegan.com
kelly.lu@finnegan.com

**MCCARTER & ENGLISH, LLP**

/s/ *Daniel M. Silver*
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiff ClearDoc, Inc. D/B/A OpenReel*