IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ClearDoc, Inc. D/B/A OpenReel, <br><br><br> Plaintiff; <br><br> v. <br><br> RiversideFM, Inc., <br><br> Defendant. | Civil Action No. 21-1422-RGA |

## MEMORANDUM OPINION

Daniel M. Silver, Alexandra M. Joyce, MCCARTER & ENGLISH, LLP, Wilmington, DE; Luke J. McCammon, Kelly Lu, FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP, Washington, DC;

 Attorneys for Plaintiff.


Anne Shea Gaza, Samantha G. Wilson, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE; Michael A. Jacobs, MORRISON & FOERSTER LLP, San Francisco, CA; Kyle Mooney, Eric W. Lin, Andrea L. Scripa, MORRISON & FOERSTER LLP, New York, NY;

 Attorneys for Defendant.

February 22, 2022



**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is Defendant's motion to dismiss for failure to state a claim. (D.I. 29). I have considered the parties' briefing. (D.I. 30, 46, 51). For the following reasons, Defendant's motion is GRANTED.

## I.   BACKGROUND

Plaintiff ClearDoc, Inc. D/B/A OpenReel ("OpenReel") sued Defendant RiversideFM ("Riverside") for infringement of U.S. Patent No. 10,560,500 ("the '500 patent"). (D.I. 2). The patent is titled "Systems and Methods for Recording and Storing Media Content" and discloses "methods and systems of facilitating recording of media content by a mobile device." (*Id.* ¶¶ 14–15). The patent claims a "control system" which can remotely trigger a mobile device to start and stop recording. *E.g.*, '500 Patent, cl. 1. In addition to the recording, which is saved locally on the mobile device, the patent claims a communication session between the control system and the mobile device, which could take the form of a livestream. (D.I. 46 at 3).

The '500 patent has twenty-one claims. Claims 1 and 11 are independent method claims. Each includes substantially similar steps, though as Riverside notes, "claim 11 is drafted from the perspective of the mobile device user instead of the 'control system' operator.'" (D.I. 30 at 5). Claim 18 is an independent claim that recites a "control system." This system is comprised of a camera, a microphone, and a processor configured to perform most of the steps described in claims 1 and 11.

The recording process steps include, as illustrated by claim 1:

1. A method of facilitating recording of media content by a mobile device, comprising:

> establishing a communication session between a control system and the mobile device over a communication network;
>
> receiving, at the control system, video content and audio content from the mobile device during the communication session, wherein the video content is captured by a camera of

the mobile device and the audio content is captured by a microphone of the mobile device;

transmitting a trigger signal, by the control system, to the mobile device, the trigger signal triggering the mobile device to start recording media content using the camera and the microphone of the mobile device during the communication session, wherein the media content recorded by the mobile device includes a portion of the video content and the audio content, wherein the mobile device includes a data storage device and stores the media content in the data storage device;

after the recording is completed, receiving the media content at the control system;

determining that the media content was successfully received by the control system; and

responsive to determining that the media content was successfully received by the control system, transmitting a first control signal from the control system to the mobile device to cause the mobile device to delete the media content from the data storage device.

The claims other than 1, 11, and 18 are dependent. Claims 2, 3, 15, 19, and 20 allow the mobile device user to view the recorded content and give feedback to the person operating the control device. Claims 4 and 16 allow for switching between the mobile device's front-facing and rear-facing cameras. Claim 5 turns off the video but retains recorded audio. Claims 6–8, 12, 13, and 17 adjust or lock the camera's auto-focus or auto-exposure features. Claim 9 determines and outputs a degree of tilt based on the phone's gyroscope. Claim 10 shows remaining battery life and whether the phone is likely to run out of battery power before the recording is complete.

## II.    LEGAL STANDARD

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleading stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 2621 (2018). The inquiry is appropriate at this stage "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

### A. *Alice* Step One

At *Alice* step one, I must "articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful." *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017). Riverside argues that the claims are directed to "recording, storing, and delivering media content using a mobile device." (D.I. 30 at 7). OpenReel argues that Riverside ignores key aspects of the claims. (D.I. 46 at 7–8 (highlighting the control system and trigger functionality, the concurrent communication session, and the automatic deletion)).

I agree that Riverside's formulation does not fully capture what the claims are "directed to." OpenReel's alternate formulation of what the claims are directed to—"technical improvements that address technical problems with recording professional quality media content using mobile devices" —is too vague to be helpful. (D.I. 46 at 1–2); *see Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) (warning against formulations that are "untethered from the language of the claims").

Thus, I will start from Riverside's "recording, storing, and delivering media content using a mobile device." I agree that the "recording, storing, and delivering" language is supported by the claims, title, and specification. (D.I. 30 at 8–10). The claims are also directed to remotely controlling the recording process. The control system, found in every claim, triggers events in the recording process remotely. One problem discussed in the specification—that of proper framing—is solved by features supporting remote control. The communication session, for instance, facilitates "feedback to the mobile device to allow the user to make adjustments that improve the media content." '500 Patent at 4:8–10.

Most claims are also directed to automatic deletion. Independent claims 1 and 11, on

which claims 2–10 and 12–17 depend, recite deletion of the locally stored media content after a

successful upload. The specification highlights a problem solved by automatic deletion: "limited

storage capacity." '500 Patent, 3:34–35. Automatic deletion "allow[s] the mobile device to

record the media content in a high quality, uncompressed format as the mobile device only

temporarily stores the media content in local memory." *Id.* 3:64–67.

Thus, most asserted claims are directed to remotely controlling the recording, storing,

delivering, and deleting of media content on a mobile device. Some are not directed to deleting.

This does not change my analysis in a meaningful way because I find that even the claims

directed to deleting are directed to an abstract idea at *Alice* step one. *See Content Extraction &*

*Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2019) (finding the

district court did not err in limiting its Section 101 analysis to a single representative claim where

all claims were "substantially similar and linked to the same abstract idea").

"In cases involving software innovations, [*Alice* step one] often turns on whether the

claims focus on specific asserted improvements in computer capabilities or instead on a process

or system that qualifies an abstract idea for which computers are invoked merely as a tool."

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F. 3d 1303, 1306 (Fed. Cir. 2020). OpenReel

points to the following "specific technological improvements:" (1) "establishing a

communication session while also storing media content locally," (2) automatic deletion, and (3)

remotely triggering the recording process. (DI 46 at 11–12.).

OpenReel argues that these improvements alter the "normal, expected operation of the

mobile device." (*E.g.*, *id.* at 9). In support, OpenReel analogizes to *SRI Int'l, Inc. v. Cisco Sys.*,

*Inc.*, 930 F.3d 1295 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 1108 (2020) and *Enfish*. (D.I. 46 at 10–13).

In *SRI*, the claims were "directed to using a specific technique—using a plurality of network monitors that each analyze specific types of data on the network and integrating reports from the monitors—to solve a technological problem arising in computer networks: identifying hackers or potential intruders into the network." 930 F.3d at 1303. The Federal Circuit held that the claims in *SRI* "actually prevent the normal, expected operation of a conventional computer network." *Id.* at 1304.

In *Enfish*, the asserted patents claimed "self-referential" database tables. 822 F.3d at 1330. These tables used a new logic structure to obviate the need for multiple "relational" tables. *Id.* at 1330–33. "In sum, the self-referential table . . . is a specific type of data structure designed to improve the way a computer stores and retrieves data in memory." *Id.* at 1339.

OpenReel likens the remote-control aspect of the '500 patent to an "override" of the "routine and conventional" operation of a smartphone. Conventional operation of a smartphone requires the user to manually press record and manually delete stored files. According to OpenReel, the '500 patent overrides this functionality by triggering recording and deletion from afar. I do not think that a remote trigger "overrides" the conventional operation, at least in the way that the caselaw uses the term. In *DDR Holdings, LLC v. Hotels.com, L.P.*, for instance, the patent addressed the problem of "retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink." 773 F.3d 1245, 1257 (Fed. Cir. 2014). Under the patent's teachings, "upon the click of an advertisement for a third-party product displayed on a host's website, the visitor is no longer transported to the

7

third party's website." *Id.* Thus, the claims "specif[ied] how interactions . . . are manipulated to yield . . . a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink." *Id.* at 1258.

Here, the control system tells the phone to start recording, and the phone starts recording. The control system tells the phone to delete local content, and the phone deletes local content. This is unlike *DDR Holdings* where the invention negated the expected result from clicking on a hyperlink.

OpenReel's technical improvements are not the sort of improvements contemplated by the *Enfish* line of cases. *Enfish* requires a "specific improvement to the way computers operate." 822 F.3d at 1336. In *SRI*, the claims recited "a specific technique." 930 F.3d at 1303. In *Enfish*, a "specific type of data structure." 822 F.3d at 1339. In contrast, the technology recited in the '500 patent is all conventional. The elements that OpenReel claims "alter" the normal functioning of a phone are described generally—"trigger signal" and "control signal"—and do not disclose a specific improvement to a communication protocol. As Riverside explains,

> [T]he claims do not recite any improved network or communications protocol used to connect the computer and the mobile device; the claims do not recite any improved file, data structure, or other software-based improvement used to record or store media content or to transmit signals or media content between the computer and the mobile device; and the claims do not recite any functionality that the computer or mobile device were not already capable of performing.

(D.I. 51 at 1).

OpenReel analogizes to *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.* for the argument that the '500 patent provides a specific solution to problems associated with prior art technologies. (D.I. 46 at 13 (citing 880 F.3d 1356 (Fed. Cir. 2018))). I think *Core Wireless* is distinguishable. In *Core Wireless*, the patents disclosed "improved display interfaces, particularly for electronic devices with small screens." 880 F.3d at 1359. The claims were

8

"directed to a particular manner of summarizing and presenting information in electronic devices." *Id.* at 1362. The Court highlighted the specificity of the claim limitations—the limitations "specifi[ed] a particular manner by which the summary window must be accessed," "restrain[ed] the type of data that can be displayed in the summary window," and "require[d] that the device applications exist in a particular state." *Id.* at 1362–63. As with *Enfish*, the *Core Wireless* patent provided a specific technological solution rather than an idea implemented using generic components.

The '500 patent is more closely analogous to the cases cited by Riverside in support of its motion to dismiss. Under these cases, I think that remotely controlling the recording, storing, delivering, and deleting of media content on a mobile device is an abstract idea.

Collecting and managing data such as video and audio recording is an abstract idea. In *In re TLI Commc'ns LLC Pat. Litig.*, the asserted claims recited "recording," "storing," "transmitting," and "receiving" data. 823 F.3d 607, 610 (Fed. Cir. 2016). This is an abstract idea. *Id.* at 613. Delivery of media content is also an abstract idea. In *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, the Federal Circuit held ineligible a patent directed to streaming media content on a mobile device. 838 F.3d 1266 (Fed. Cir. 2016). The Court rejected the patentee's argument that the patent disclosed a concrete technological improvement because wireless streaming was not "routine, conventional, or well-known." *Id.* at 1269. The Court held:

> The patent, however, does not disclose any particular mechanism for wirelessly streaming content to a handheld device. The specification describes the function of streaming content to a wireless device, but not a specific means for performing that function. Claim 14, in turn, recites (1) a "media managing system" that maintains a library of content, (2) a "collection of instructions" that are "operable when executed" by a handheld wireless device to request streaming delivery of the content, and (3) a "network based delivery resource" that retrieves and streams the requested content to the handheld device. At that level of generality, the claims do no more than describe a desired function or outcome, without providing any limiting detail that confines the claim

to a particular solution to an identified problem. The purely functional nature of the claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea.

*Id.*

As in *Affinity Labs*, the '500 Patent describes a "control system," but "[t]he specification makes clear that any technology capable" of accepting user input, processing that input, and outputting information back to the user would be covered. *Id.* at 1271; *see* '500 Patent at 6:60–7:63. Similarly, the "data storage device" relies on conventional technology and "may include, for example, a hard disk, any other suitable magnetic medium, CD-ROM, CDRW, DVD, any other suitable optical medium, RAM, PROM, EPROM, FLASH-EPROM, any other suitable memory chip or cartridge, a carrier wave, or any other suitable medium from which a computer can read." '500 Patent at 6:3–23. *See In re TLI*, 823 F.3d at 612 ("The specification does not describe a new telephone, a new server, or a new physical combination of the two. The specification fails to provide any technical details for the tangible components, but instead predominately describes the system and methods in purely functional terms.").

I think "remote control" is an abstract idea when, as here, the patent does not claim some new way of establishing the connection or improving the process. In the unreported case *Sensormatic Elecs., LLC v. Wyze Labs, Inc.*, the Federal Circuit held ineligible patents "which generally describe a wireless surveillance system and methods of operation." 2021 WL 2944838, at *1 (Fed. Cir. July 14, 2021). The claims included "interaction with a remote server" and "direct wireless communication with a remote viewing device operable by an authorized user." U.S. Pat. No. 7,954,129 cl. 14. The Federal Circuit agreed that the patents were "directed to the abstract ideas of wireless communication and remote surveillance." *Id.* at *3 (quoting *Sensormatic Elecs., LLC v. Wyze Labs, Inc.*, 484 F. Supp. 3d 161, 165 (D. Del. 2020)).

In sum, the recording, storing, delivering, and deleting of media content on a mobile device is an abstract idea. Remote control is an abstract idea. The piling of abstract ideas upon

each other does not save the '500 patent at *Alice* step one. *See, e.g., id.* ("[P]rioritization of ICD input data through detection of trigger events is an aspect of the abstract idea of remote surveillance as well as drawn to the abstract idea of classifying and organizing images. Accordingly, we conclude that the claims are directed to an abstract idea at *Alice* step one.").

The dependent claims similarly do not recite any specific technological improvements. Thus, all claims of the '500 Patent are directed to the abstract idea of remotely controlling the recording, storing, and delivering of media content on a mobile device. Most claims are additionally directed to the abstract idea of automatic deletion, but as discussed above, this does not recite a specific technological improvement.

### B. *Alice* Step Two

At step two, although the "question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact," "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Riverside argues that there is no genuine factual dispute. (D.I. 30 at 17). Based on the present record, I agree.

Individually, the elements do not recite an inventive concept. As discussed above, the specification shows that elements such as the "control system" and the "data storage device" merely rely on conventional technology.

As an ordered combination, the claims do not recite an inventive concept that is "significantly more than a patent upon the ineligible concept itself." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 218 (cleaned up). The '500 patent aims to allow for the production of "polished, professional quality media content" without the need for onsite video production

agencies. '500 Patent at 3:64–4:2. According to OpenReel, to achieve this goal, the '500 patent

discloses several inventive concepts. (D.I. 46 at 16–20). These inventive concepts overcome

"industry challenges" such as "proper framing [of] a video when unassisted" and "limited

storage capacity of some mobile devices." (D.I. 2 ¶ 15). The '500 patent addresses framing

challenges through the communication session, which allows for the director to give the user

feedback on positioning, and the remote-control feature, which "allows the user to avoid

undesired movement at the beginning of the recording." (D.I. 46 at 4). The '500 patent's

automatic delete function addresses the limited storage capacity issue. (*Id.* at 17). OpenReel

also has an expert, who explains, "The '500 Patent represents a novel development for recording

remote media content in mobile devices by addressing several industry challenges" and

represents an "innovation in the field of remote video recording." (D.I. 2-1, Ex B ¶¶ 23–24).

     I do not think the claims are directed to an inventive concept involving higher-quality

media content, at least in the technical sense of higher video or audio quality. As Riverside

notes, "none of the limitations recite or require that the streamed or locally-recorded content to

be of any particular quality, let alone that the locally-recorded content be of a higher quality."

(D.I. 51 at 9).

     Regarding the other inventive concepts, the technological claim limitations such as

"trigger signal" are described in abstract, generic ways. *See Sensormatic*, 484 F. Supp. 3d at 169

("[T]he 'automatic detection of trigger events' claim limitation . . . is a feature of the abstract

idea of remote surveillance and the mere automation and distribution of event detection using

generic components does not provide an inventive step. The patent does not explain how the

automatic detection at multiple locations is achieved beyond the use of generic components."

(citations omitted)). OpenReel's expert provided conclusory statements regarding the novelty of

the '500 patent but has not provided any support that the claim limitations include

nonconventional steps or technologies.  (*See* D.I. 2 Ex. B ¶¶ 23–24).

Claims fail *Alice* step two when they are directed to "an abstract idea implemented on

generic computer components, without providing a specific technical solution beyond simply

using generic computer concepts in a conventional way."  *Bascom Glob. Internet Servs., Inc. v.

AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016).  Ultimately, the claims here do not

recite anything other than the use of conventional technology to perform the abstract idea of

remotely controlling the recording, storage, delivery, and deletion of media content.  The

additional limitations recited in the dependent claims also include generic mobile device or

computer components and conventional steps.  Thus, the '500 patent does not supply an

inventive concept at *Alice* step two.

## IV.   CONCLUSION

Riverside's motion to dismiss is granted.  Dismissal is without prejudice.  OpenReel has

requested leave to amend.  (D.I. 46 at 19 n.1).  I will grant that request, as it is possible OpenReel

could successfully amend its complaint.

An appropriate order will issue.