IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ClearDoc, Inc. D/B/A OpenReel,<br><br>Plaintiff;<br><br>v.<br><br>RiversideFM, Inc.,<br><br>Defendant. | Civil Action No. 21-1422-RGA |

MEMORANDUM OPINION

Daniel M. Silver, Alexandra M. Joyce, MCCARTER & ENGLISH, LLP, Wilmington, DE; Luke J. McCammon, FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP, Washington, DC;

    Attorneys for Plaintiff.

Anne Shea Gaza, Samantha G. Wilson, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE; Michael A. Jacobs, MORRISON & FOERSTER LLP, San Francisco, CA; Kyle Mooney, Eric W. Lin, Andrea L. Scripa, MORRISON & FOERSTER LLP, New York, NY;

    Attorneys for Defendant.

August 15, 2022

**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is Defendant's motion to dismiss the first amended complaint. (D.I. 83). I have considered the parties' briefing. (D.I. 84, 86, 88). Because Plaintiff, despite an opportunity to do so, has failed to plead an inventive concept, Defendant's motion to dismiss is GRANTED.

## I. BACKGROUND

ClearDoc, Inc. D/B/A OpenReel ("OpenReel") sued RiversideFM ("Riverside") for infringement of U.S. Patent No. 10,560,500 ("the '500 patent"). (D.I. 2). The same day, ClearDoc moved for a preliminary injunction. (D.I. 4). Riverside moved to dismiss ClearDoc's complaint for failure to state a claim on patentability grounds. (D.I. 29). I granted Riverside's motion to dismiss, finding that the asserted claims were directed to an abstract idea and merely implemented the abstract idea with generic computer components conventionally used. (D.I. 77, 78). ClearDoc filed an amended complaint (D.I. 82), which Riverside seeks to dismiss on the same grounds (D.I. 84).

The '500 patent is titled "Systems and Methods for Recording and Storing Media Content" and discloses "systems and methods for recording and storing media content using a mobile device." '500 Patent, 1:1–3, 17–19. It was issued in 2020 and appears to claim priority to a 2017 provisional application. The patent claims a "control system" which can remotely trigger a mobile device to start and stop recording. *E.g.*, '500 Patent, cl. 1. In addition to the recording, which is saved locally on the mobile device, the patent claims a communication session between the control system and the mobile device, which could take the form of a livestream. (D.I. 82 ¶18).

The '500 patent has twenty-one claims. Claims 1 and 11 are independent method claims. Each includes substantially similar steps, though as Riverside notes, "claim 11 is drafted from the perspective of the mobile device user instead of the 'control system' operator.'" (D.I. 30 at

2

5). Claim 18 is an independent claim that recites a "control system." This system is comprised of a camera, a microphone, and a processor configured to perform most of the steps described in claims 1 and 11.

The recording process steps include, as illustrated by claim 1:

1. A method of facilitating recording of media content by a mobile device, comprising:

> establishing a communication session between a control system and the mobile device over a communication network;
>
> receiving, at the control system, video content and audio content from the mobile device during the communication session, wherein the video content is captured by a camera of the mobile device and the audio content is captured by a microphone of the mobile device;
>
> transmitting a trigger signal, by the control system, to the mobile device, the trigger signal triggering the mobile device to start recording media content using the camera and the microphone of the mobile device during the communication session, wherein the media content recorded by the mobile device includes a portion of the video content and the audio content, wherein the mobile device includes a data storage device and stores the media content in the data storage device;
>
> after the recording is completed, receiving the media content at the control system;
>
> determining that the media content was successfully received by the control system; and
>
> responsive to determining that the media content was successfully received by the control system, transmitting a first control signal from the control system to the mobile device to cause the mobile device to delete the media content from the data storage device.

## II.    LEGAL STANDARD

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleading stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 2621 (2018). The inquiry is appropriate at this stage "only when there are no factual allegations that, taken as true, prevent resolving the eligibility

3

question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

Section 101 of the Patent Act provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court recognizes three categories of ineligible subject matter—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). The purpose of these exceptions is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 71 (2012).

In *Alice*, the Supreme Court reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." 573 U.S. at 217. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and as an ordered combination" to see if there is an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217-18 (cleaned up). "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *Id.* at 221 (cleaned up). Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222 (alteration in original)

4

(quoting *Bilski*, 561 U.S. at 610–11). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223.

### III. DISCUSSION

I previously found the '500 patent claims to be directed to the abstract idea of remotely controlling the recording, storing, and delivering of media content on a mobile device. Most claims are also directed to the abstract idea of automatic deletion.[1] (D.I. 77 at 11). At *Alice* step two, I found that the claims did not recite an inventive concept because they merely recited using generic computer components in conventional ways. (*Id.* at 11–13). OpenReel has filed an amended complaint (hereinafter, "FAC") with additional allegations regarding the inventive concept. (D.I. 82 ¶¶ 15–32). For the reasons that follow, even accepting the FAC's allegations as true, these do not supply a technological solution to a technological problem. There is no inventive concept here.

A non-patent lawyer might describe one of Plaintiff's patent claims as follows:[2]

> A method of making better video recordings when using a mobile phone:
>
> 1. Set up a livestream between a person with a smartphone and a second person;
> 2. Where the second person can direct the first person in real time in the use of the video camera and start and stop a video recording;
> 3. Where the video recording is stored in local memory of the smartphone;
> 4. Where the video recording is also transmitted to the second person; and
> 5. Where when the second person has successfully obtained a copy of the video recording, the video recording is deleted from the smartphone's local memory.

The patent claims add seemingly technical language, such as "media content," "control system," "communication session," "mobile device," "trigger signal," "data storage device," and "control

---

[1] OpenReel invites me to revisit my analysis at *Alice* step one. (D.I. 86 at 9). I have considered OpenReel's arguments and decline to do so.

[2] What follows is not claim construction, and it does not capture the scope or all the details of the claim.

signal," but these terms amount to no more than generic computer components. The devices can use "hardware components, including micro-processors, communication/networking interfaces, memory, signal filters, circuitry, etc." '500 Patent 5:23–25. The communication network can "include any of a variety of wireless sub-networks that may further overlap stand-alone ad-hoc networks and the like." *Id.* 8:31–34. The identification number that establishes the communication session can be communicated "over the communication network" or "via postal mail and/or an in-person oral conversation." *Id.* 9:16–18. There is nothing inventive about the elements themselves, and Plaintiff does not claim that there is.

As an ordered combination, the claims do not provide a "specific technical solution beyond simply using generic computer concepts in a conventional way." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016). Generic computer concepts may provide an inventive concept when they form "an unconventional technological solution . . . to a technological problem." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1301 (Fed. Cir. 2016). The FAC has not alleged facts supporting the conclusion that the claims contain an unconventional technological solution as opposed to an abstract idea carried out with generic technology.

OpenReel argues that the claim's use of a concurrent "communication session" (i.e., a livestream) while recording content locally on the smartphone is an inventive concept. (D.I. 86 at 11–17). It is not. It is, at most, simply combining abstract ideas—remotely controlling the recording process and using the smartphone to record it. In a way, this is just a rephrase of the abstract idea itself. The communication session is necessary to facilitate the remote-control process. The communication session's audio and video content transmissions allow for proper framing before the recording starts. '500 Patent, 4:3–7. Remotely triggering local recording,

6

storage, and deletion is the abstract idea itself. "[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention significantly more than that ineligible concept." *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) (cleaned up).

Even if the simultaneous communication session and local recording is not wholly consumed in the abstract idea itself, it does not add "significantly more" to the abstract idea. *Alice*, 573 U.S. at 215.

While "specific, plausible factual allegations about why aspects of" the claims are not conventional can preclude dismissal, these allegations must add up to a technical implementation that is inventive. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317–18 (Fed. Cir. 2019). Here, the FAC's allegations regarding the prior art merely address broad features rather than technical implementations. *Cellspin* is a useful comparison. In *Cellspin*, the Federal Circuit held that the complaint fairly alleged that the use of HTTP at a particular step in the process and sharing data only after a certain step was performed was inventive. *Id.* at 1318. The complaint "pointed to evidence suggesting that these techniques had not been implemented in a similar way." *Id.* at 1319. For instance, the complaint alleged, "HTTP transfers of data received over a paired wireless connection to web services were non-existent." *Id.* at 1317 (cleaned up).

OpenReel's FAC, on the other hand, gestures broadly to conventional approaches:

> One approach was to allow systems to record video locally, as with traditional production video cameras. Those systems required a user to identify the target to record, properly frame the content in a viewfinder, and record the content to the camera for later use. This type of operation, however, was entirely local, without feedback or interaction with outside parties. A second approach was to record a real-time communication between participants over a live video stream. This approach had the benefit of allowing interaction with other participants, but it had the drawback of being susceptible to issues with network connectivity.

7

(D.I. 82 ¶ 15). The problems with conventional approaches were overcome, according to the FAC, by the '500 patent's concurrent use of a livestream and local recording. (*Id.* ¶18). OpenReel argues, "this combination of features was an inventive concept that was not well-understood, routine, or conventional." (D.I. 86 at 12 (citations omitted)). While the FAC may allege a novel combination of features, there are no allegations that the features were combined in a way that provided a specific technological solution.

A software "feature" is something the software can do. For instance, a feature could be recording media content locally. A software feature can be implemented in a number of ways. It is the technical implementation that can be inventive. The feature itself is just an abstract idea. Allowing a patent on the feature would preempt all implementations of the idea, something the caselaw does not allow. *Bascom*, 827 F.3d at 1352. Even if features (such as local recording and livestreaming) have not been combined before, "a claim for a new abstract idea is still an abstract idea." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016). There is nothing in the claims, specification, or FAC to suggest that the '500 patent claims an inventive implementation of local recording while livestreaming.

OpenReel points to the "temporary use of a mobile device" as a second "inventive concept." (D.I. 86 at 18). This "temporary use" is facilitated by a trigger signal that starts recording and a control signal that deletes the content. Riverside responds, "OpenReel does not point to any specific limitation or limitations that recite . . . any improved means of creating, sending, or receiving and executing on a 'trigger signal' to start the recording or a 'control signal' to delete the recording." (D.I. 88 at 7). I agree. There does not appear to be anything new in the signals themselves. To the extent OpenReel is arguing that the automatic deletion of media content supplies the inventive concept, I have already decided that automatic deletion is

8

an abstract idea. (D.I. 77 at 11). This "temporary use of a mobile device," then, simply reads on the abstract idea of remotely controlling the recording, storing, delivering, and automatic deletion of media content on a mobile device. The FAC, specification, and claims reveal that the claimed advance is nothing more than an abstract idea implemented on "already-available computers that are not themselves plausibly asserted to be an advance." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1366 (Fed. Cir. 2020) (quotation omitted).

Riverside requests that I dismiss OpenReel's claims with prejudice. (D.I. 84 at 18). OpenReel does not respond. (*See* D.I. 86). I assume that OpenReel has mustered its best factual support in the FAC. Since OpenReel has again come up short, I will dismiss the claims with prejudice.

## IV.   CONCLUSION

An appropriate order will issue.